## SMITH v. CITY OF AUBURN.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

1. MUNICIPAL CORPORATIONS—DRAINAGE—DAMAGE TO LANDOWNER.

The fact that a city has macadamized the surface of a street, and constructed catch-basins and conduits whereby the flow of water draining from the street is accelerated, does not render it liable for damages from the overflowing of a stream into which the drainage water empties, unless the drainage is increased to an extent beyond that which could be accommodated by the water course in its natural condition.

2. SAME—NARROWING OF STREAM.

A city is not liable for damages to a landowner caused by the overflowing of a stream crossing his premises, into which the city drains sewage and surface water, where the overflowing is the result of the landowner having unduly narrowed and obstructed the stream.

3. SAME—ACTION FOR DAMAGES—COMPLAINT—VARIANCE.

In an action against a city for damages arising from its discharges of sewage and surface waters into a stream crossing plaintiff's premises, and which overflowed, damaging her property, the complaint sought to charge liability on the theory that the stream was a natural water course; but there was evidence that the water course had been converted into a sewer or drain with the acquiescence of defendant, and the finding in favor of plaintiff, in effect, determined that the water course had been destroyed. *Held*, that a judgment for plaintiff was erroneous, because the action was tried and decided on a theory different than that of the complaint.

4. SAME—PLEADINGS—AMENDMENT ON APPEAL.

The question of variance having been presented on the trial, and a motion to amend the pleadings having been denied, and the error arising from the variance having been substantial, an amendment of the pleadings would not be allowed on appeal.

Appeal from Judgment on Report of Referee.

Action by Frances M. Smith against the city of Auburn. From a judgment in favor of plaintiff, defendant appeals. Reversed.

This is an appeal from a judgment upon the report of a referee, enjoining and restraining defendant from discharging street filth and surface water into a certain closed channel constructed across plaintiff's premises, and from which channel, as claimed, such water and filth, so gathered and discharged by defendant, had overflowed and flooded plaintiff's premises; also awarding to plaintiff the sum of $1,840 damages caused, as claimed, by flooding of her premises before the commencement of the action, and the sum of $528.59 costs, amounting in all, with interest, to the sum of $2,379.64.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

L. A. Pierce, for appellant.
E. C. Aiken, for respondent.

HISCOCK, J. We think the judgment appealed from must be reversed, and a new trial granted, because the action was largely tried and decided upon a theory different from that set forth and outlined in plaintiff's complaint. In order to appreciate the variance which we deem to exist, it will be essential to review some of the leading features of the case.

As indicated by the nature of the judgment already referred to, it is claimed by plaintiff that defendant has been guilty of unlawfully causing her premises in the city of Auburn to be flooded with water

and sewage. There seems to be no question but what her premises
were so flooded from time to time for several years prior to the
commencement of this action, but there is a very substantial dispute
in relation to defendant's responsibility therefor. The flooding di-
rectly resulted from the overflow of a closed channel running across
the premises in question. It was alleged in the complaint that de-
fendant caused this overflow by connecting with this channel, at vari-
ous points before reaching plaintiff's lands, sewers, catch-basins and
conduits, whereby a great amount of surface drainage from streets and
sewage was collected and discharged into the channel, and ultimately
upon plaintiff's lands. Upon the trial it quite conclusively appeared
that defendant had not connected any sewers with the channel in
question, but had constructed various catch-basins and conduits,
whereby the surface drainage from portions of streets lying in the
vicinity were discharged into it; that whatever sewage was col-
lected therein came from the private sewers of landowners living upon
the line of the channel. The difficulty in the case arises from the fact,
however, that plaintiff, by her complaint, sought to charge the de-
fendant with liability for its acts upon the theory that this was a
natural water course which extended across plaintiff's premises, where-
as by the proofs and findings of the learned referee the defendant
has been held liable upon the theory that the water course had been
abandoned, and that there had been substituted therefor, with her co-
operation and acquiescence, a sewer. There is no controversy but
that originally there was a natural water course, originating with and
fed by springs, traversing quite a portion of the city of Auburn, in-
cluding plaintiff's premises, and ultimately emptying into Owasco
creek. Neither is there any dispute, as we understand it, but that
the portions of the streets from which defendant collected and dis-
charged into the channel in question the surface water lay within
the natural watershed of this water course. Some time prior to the
commencement of the action this water course had been inclosed or
covered. As bearing upon our construction of the theory upon which
the plaintiff framed her complaint, we may quote certain allegations
therefrom, as follows:

"Plaintiff further alleges that running through said premises [of plaintiff]
from east to west is a natural water course, fed by springs, and in which
water runs continually; that prior to about January, 1890, there was not
at any time sufficient water in said stream to cause serious damage or in-
jury to claimant's said premises or the buildings thereon; that since about
said time and down to the present time said defendant, acting through its
certain officers and agents, caused certain sewers, drains, conduits, and catch-
basins to be built, constructed, and connected, * * * and so built, con-
structed, and connected said sewers, conduits, and catch-basins that the
same should discharge into said water course above claimant's said lands
and premises; that said sewers, drains, conduits, and catch-basins were so
located and constructed that thereby in and through them a large amount
of rain and waste water and sewerage * * * is received * * * and
are wrongfully made to drain, and wrongfully discharged into said water
course, forming new and destructive currents and volumes of water and
sewage."

And at other places in said complaint are found other allegations
referring to said water course as then existing, and to defendant's

wrongful use thereof by improper collection and discharge of water into the same. Without referring to all of these allegations in detail or at length, we think that a fair and reasonable construction and interpretation of them leads to the conclusion that plaintiff by her complaint limited her right of recovery against the defendant to an abuse by it of its rights in and to a natural water course flowing across her premises. The counsel for the respondent and the learned referee, in a discussion of this question, urge that other views may be taken of the complaint as a whole, but we are unable to agree with these contentions.

Without attempting to analyze completely and exactly the rules which would govern defendant's use of a natural water course, it may be stated generally and without doubt that it had certain well-defined rights of drainage thereinto. This is not disputed by the respondent, but, so far as surface drainage of its streets is concerned; complaint alone is made because, owing to the macadamized surface of the streets, more water drained off than would have done in the natural condition of the earth, and also because by the construction of catch-basins and conduits the flow of water was accelerated. Again, without attempting at this time to determine just what liability might attach to defendant if plaintiff's complaint in these two respects was sustained, it still may be said that defendant certainly would not become liable unless by this means the drainage was increased to an extent beyond that which could be accommodated by the water course in its natural condition. The defendant would not be made liable for any damages which might come to a landowner upon the line of the water course as the result of unduly narrowing and obstructing the same, as it is claimed the plaintiff has done.

When the case came on for trial the learned referee, in spite of the objections made in due form and time by the defendant, allowed proof that in 1880, by the construction of what was known as the Franklin street sewer, and at various and subsequent dates by other acts, the defendant had diverted and destroyed this natural water course, and that thereafter substantially upon its line a closed sewer or drain had been constructed, which existed at the time the action was commenced, and from which the overflows in question occurred. Evidence was also given to the effect that defendant had taken part in the construction and maintenance of this sewer or drain. And finally, by various findings and conclusions, directly or inferentially, the referee determined that the water course had been destroyed, and that in its place a sewer or drain had been constructed with the co-operation and acquiescence of the defendant, and for the condition and operation of which it was to some extent responsible; and the liability of the defendant, by necessary inference, at least, was predicated upon this theory. We do not deem it essential to spend considerable time in demonstrating that this was a very different form of liability from that originally alleged in the complaint. We shall merely advert again to the condition of the channel upon plaintiff's premises. It appeared that its size under her barn was smaller than the dimensions which prevailed before her premises were reached. It also appeared that when the floods came upon her premises they

seemed to break out at this point. If defendant had adopted this form of construction, and thereafter drained into this alleged sewer a volume of water which it could not accommodate, it will be seen at once that its liability might be very different from that which would prevail in the case of a natural water course improperly obstructed by the plaintiff. The learned referee himself recognizes and very distinctly refers to the different rules of liability which would govern the two cases, respectively. The counsel for the respondent seemed to appreciate that there was a substantial variance between the pleadings and the proofs, for upon the trial he sought to have the former so amended as to conform to the latter. While we may feel that upon a trial had before a referee the ends of justice might have been furthered by allowing such an amendment upon proper terms, the referee for some reason refused to allow the same, and therefore the question is put into and remains in the case upon this appeal.

Various reasons are urged upon our consideration why the judgment should not be reversed for the cause discussed, but while we appreciate that the case has received very careful attention, and been elaborately considered in and covered by the findings of the referee, we feel unable to adopt this course.

It is suggested that this court now has the power upon this appeal to amend the pleadings so as to conform to the proofs which were offered upon the trial. We do not feel that we should do this. The question urged upon our attention by the appellant was fairly presented upon the trial. The motion to amend the pleadings was denied, and the ruling thereby in effect made that the parties should be governed in their conduct of the trial by the pleadings as they then existed. The learned counsel for the appellant may very well have elected to stand upon his exceptions, and try the action under the construction which he placed upon the complaint, rather than to accept the views of the referee, and try the case upon the theory which finally governed its disposition. The error, as we conceive it, which led to the results complained of by the appellant, was so substantial a one that we are unwilling to assume that the defendant may not have been injured by it. The judgment should be reversed and a new trial granted, with costs to the appellant to abide event.

Judgment reversed and new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein. All concur.